UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

<u>United States of America</u>,
　　　Government

　　　v.　　　　　　　　　　　　　　　　　Case No. 11-cr-176-1-SM
　　　　　　　　　　　　　　　　　　　　　Opinion No. 2012 DNH 164
<u>Anthony Silva</u>,
　　　Defendant

**O R D E R**

　　　Defendant, Anthony Silva, moves to suppress evidence he says was obtained from an unconstitutional search and seizure of his person and automobile.  Having considered the evidence presented at a suppression hearing, the briefs filed by the parties, and the argument of counsel, the motion (document no. 17) is denied.

**Findings of Fact**

　　　Daniel Pelletier, a resident of Derry, New Hampshire, went to the Derry Police Department on the evening of July 18, 2010, around 11:00 p.m., where he reported that Anthony Silva, the defendant, paid him $150.00 in counterfeit United States currency to satisfy a $100.00 bill for mechanical work Pelletier had done on Silva's car.  Pelletier gave police the counterfeit currency he said he got from the defendant.  He also told police that defendant could be found sitting in his car, described as a silver Cadillac, in a an apartment complex parking lot (where

Pelletier lived). He said defendant was living in his car, which contained numerous personal belongings, and that additional counterfeit currency would be found in the car. He also told police that defendant was making counterfeit identification documents as well. When police asked why Pelletier was reporting defendant, he said that he was "fed up" with defendant over past financial transactions in which he thought Silva had taken advantage of him.

   While it is not entirely clear who did it (it was likely Sergeant Muncie), still, the police checked Silva's name against pertinent databases to determine whether he was the subject of any outstanding warrants. They found an active electronic bench warrant for an Anthony Silva, related to an unpaid fine for driving an unregistered vehicle. Two officers (Sergeant Muncie and Office Phillips) then went to the location described by Pelletier. They found defendant sitting in his car. It was a silver Cadillac, as Pelletier had said. The car was filled with personal items, and defendant did appear to be living in it. The officers approached the car.

   Defendant was asked for his driver's license. He resisted, claiming he had a right to be there and did not have to identify himself. Muncie insisted, telling defendant that if he did not

produce his driver's license he would be arrested for disobeying a police officer.[1]  Defendant then produced a New Hampshire driver's license.  Muncie handed the license to Officer Phillips, who radioed defendant's name and date of birth to the police dispatcher, who in turn ran another warrant check, confirming that defendant was subject to arrest on the outstanding warrant.  Defendant was placed under arrest pursuant to that warrant, and searched incident to that arrest.

The search of defendant's person produced an apparently counterfeit New York driver's license that was ostensibly issued to "John Smith" but displayed defendants' photograph.  And, police recovered a counterfeit $10.00 bill and a counterfeit $20.00 bill from his pocket.  Defendant was transported to the police station, where he was asked to consent to a search of his automobile.  He declined, so police towed his car to a secure lot to await execution of a search pursuant to a warrant they intended to seek.  Defendant was released from custody early in the morning of July 20, 2010.

---

[1]  Sgt. Muncie probably had in mind New Hampshire statutes that require a person "driving" or "in charge" of a vehicle to provide his or her name, address, and date of birth, and driver's license, when requested by a law enforcement officer.  See N.H. Rev. Stat. Ann. ch. 264:4 and 263:2.  But, it is not certain that those laws applied under the circumstances, because defendant's car may not have been on a "way" (RSA ch. 259:125) and he may not have been "driving" (the parties do not discuss the issue).

The following afternoon another police officer spoke to Pelletier about defendant.  Pelletier said that he had spoken to the defendant earlier that morning and that defendant acknowledged that he was in "big trouble" because he had $3,000.00 in counterfeit currency in the trunk of his car and $200.00 to $300.00 in counterfeit currency in the glove box.

Because the case involved counterfeit currency, the Secret Service was notified and assumed investigative responsibility.  An application for a search warrant was filed four days later, on July 23, 2010, and a warrant issued that same day.  The warrant was executed and defendant's car searched three days later, on July 26, 2010.  In an affidavit supporting the warrant application, Secret Service Special Agent Brian M. Coffee, related the information Pelletier gave to the Derry Police Department and noted the corroborating observations by police officers.  He also informed the court that other counterfeit bills, bearing the same serial numbers that appeared on the bills given police by Pelletier, had been passed in nearby Manchester, New Hampshire, on July 12, 2010.  Coffee also wrote that he thought Pelletier's information was trustworthy and reliable because he gave it voluntarily, without seeking or receiving anything in return, and because the information was corroborated by the counterfeit currency provided by Pelletier, the

4

counterfeit currency taken from defendant incident to his arrest on the outstanding bench warrant, and the fact that defendant was found where and as Pelletier described.

Having heard Pelletier and a family member testify at the suppression hearing, it is apparent to me that Pelletier suffers from some degree of psychological impairment. He seemed to be decidedly confused about some major aspects of his personal history, and seemed as well to entertain fanciful, perhaps delusional, ideas about his circumstances. For example, he believes he won a substantial sum (millions of dollars) in the Massachusetts lottery (it was not shown that he did not, but still, it seems improbable), and that he owned a number of businesses in Derry that he frequents, which were unlawfully taken from him (again, although not disproved, his testimony seemed improbable). And, defendant's evidence suggested that Pelletier had made baseless complaints to the Derry Police Department in the past, and that he was regarded by the police department (in general) as both an unreliable complainant and a source of disquiet within the town. However, it is clear that neither the police officers involved in the investigation or arrest of defendant, nor Special Agent Coffee (who applied for the warrant) were aware of Pelletier's potential difficulties or his past contacts with the police department, and they had no

reason to think Pelletier might not be providing reliable information or that he was anything other than an ordinary citizen providing information about potential criminal activity.

## Discussion

Defendant raises a number of related issues, but essentially challenges the legality of the search of his person and automobile and seeks to suppress evidence derived from those searches. Each search, however, was completely lawful and conducted well within constitutional bounds.

Officer Donaghue, who initially spoke to Pelletier, had no reason to think him incapable of providing accurate information, nor to doubt his good faith. That Pelletier handed over the counterfeit currency he said defendant gave him provided substantial corroboration of his report. Moreover, when police officers subsequently verified that defendant was at the location described, sitting in a silver Cadillac, and that he was apparently living in the car — all as described by Pelletier — they had, under all the circumstances, at the very least, a reasonable and articulable suspicion that defendant had recently engaged in criminal activity involving counterfeit currency. See 18 U.S.C. § 472. Accordingly, the officers were entitled to "stop" defendant and conduct a brief investigation to either

confirm or dispel that suspicion. Terry v. Ohio, 392 U.S. 1 1968); United States v. Acosta-Colon, 157 F.3d 9 (1st Cir. 1998).

Police officers are not limited to personal observations in justifying Terry-stop type investigations — reasonable suspicion justifying a brief investigatory intrusion may be based, as here, on information provided by others. See, e.g., United States v. Romain, 393 F.3d 63, 71 (1st Cir. 2004) (citing Adams v. Williams, 407 U.S. 143, 147 (1972)). Pelletier's information, as corroborated, carried sufficient indicia of reliability to warrant the officers' acting upon it. See Romain at 71. And, because the police had a reasonable basis to suspect criminal activity, they were entitled to diligently pursue a means of investigation likely to confirm or dispel their suspicions quickly. See United States v. Sharpe, 470 U.S. 675, 686 (1985).

Accordingly, the police officers properly approached defendant's car and engaged the defendant. Because the Terry "stop" (or investigation) was justified, the officers were also justified in requiring defendant to identify himself. The Supreme Court, in Hiibel v. Sixth Judicial Dist. Court of Nev., 542 U.S. 177 (2004), made it clear that questions concerning a suspect's identity are a routine and accepted part of many Terry stops, and that obtaining a suspect's identity during a valid

7

Terry stop serves important governmental interests, and is constitutionally permissible:

> Indeed, knowledge of identity may inform an officer that a suspect is wanted for another offense, or has a record of violence or mental disorder. On the other hand, knowing identity may help clear a suspect and allow the police to concentrate their efforts elsewhere.

Id. at 186 (citation and internal punctuation omitted). See also United States v. Hensley, 469 U.S. 221, 229 (1985) ("[t]he ability to briefly stop [a suspect], ask questions, or check identification in the absence of probable cause promotes the strong government interest in solving crimes and bringing offenders to justice."); Hayes v. Florida, 470 U.S. 811, 816 (1985); Adams v. Williams, 407 U.S. 143, 146 (1972).

Accordingly, defendant's arrest pursuant to the outstanding warrant was lawful, as was the search of his person incident to that arrest. That counterfeit currency and a counterfeit license were found on defendant's person, when considered in light of Pelletier's earlier statements and his handing over of counterfeit currency, and the fact that defendant was apparently living in his car, all added up to probable cause to search defendant's vehicle for evidence of criminal activity related to counterfeiting. That is, under the circumstances it was

reasonably likely that additional counterfeit currency would be found in the car in which defendant was living.

So, police officers could have searched defendant's car at that point — not incident to his arrest on the unrelated warrant, but under the familiar "automobile exception," which provides that "'[i]f there is probable cause to believe a vehicle contains evidence of criminal activity,' agents can search without a warrant 'any area of the vehicle in which evidence may be found.'" United States v. Polanco, 634 F.3d 39, 42 (1st Cir. 2011) (quoting Arizona v. Gant, 556 U.S. 332, 347 (2009)); see also Pennsylvania v. Labron, 518 U.S. 938, 939 (1996). Probable cause, of course, requires only a fair probability that evidence of criminal activity will be found in the place to be searched — a standard easily met in this case. See United States v. Woodbury, 511 F.3d 93, 97-98 (1st Cir. 2007).

But the police officers did not search defendant's car pursuant to the automobile exception. Instead, they towed the car to a secure lot and applied for a search warrant. The warrant application was presented to the court four days later, on July 23, 2010, a warrant issued, and it was executed on July 26, 2010. That seven (7) day delay in obtaining and executing a search warrant was reasonable under all the circumstances and

provides defendant with no grounds upon which to seek suppression of the evidence found during the search. See United States v. McHugh, 769 F.2d 860 (1st Cir. 1985) (seven day delay between car's seizure and search not unreasonable).

Defendant finally argues that the search of his car pursuant to the warrant was unlawful because the warrant was procured based upon a material omission from the affidavit supporting Agent Coffee's application. See Franks v. Delaware, 438 U.S. 154 (1978). A Franks hearing is required when a defendant makes a substantial preliminary showing that (for purposes of this case) the affidavit supporting the warrant application suffered from a material omission, that the material omission was intentional or the result of a reckless disregard for the truth, and that, if the omitted material was considered, probable cause would not be demonstrated. See Franks supra; United States v. Reiner, 500 F.3d 10, 14 (1st Cir. 2007); United States v. Stewart, 337 F.3d 103, 105 (1st Cir. 2003); United States v. Castillo, 287 F.3d 21, 25 (1st Cir. 2002).

Defendant has not made the requisite preliminary showing warranting a Franks hearing. He says that the complainant, Pelletier, was not a credible informant because he exhibits fanciful even delusional thinking and the Derry Police Department

was aware of that condition.  The officers involved in the investigation of this case, however, were not aware of that circumstance, and Agent Coffee, the affiant, was certainly not aware of that circumstance.  It is clear that neither Agent Coffee nor the Derry police officers involved in the investigation <u>intentionally</u> omitted that information from the supporting affidavit.

Additionally, defendant says that Agent Coffee at least knew, or should have known, after reading pertinent Derry police reports, that Pelletier told police at the outset that he was upset with defendant, was "fed up" with him, felt he had been ill-treated in the past by defendant, and so had a motive to falsely accuse defendant of passing counterfeit currency (or generally to "set him up").  That critical information reflecting on Pelletier's credibility, he says, should have been included in the supporting affidavit, but was intentionally or recklessly left out.  Had the Magistrate Judge been presented with that information, defendant argues, probable cause to search his car would not have been found to exist and the search warrant would not have issued.

I agree that information related to Pelletier's potential motive to falsely accuse defendant should have been included in

11

the affidavit for the Magistrate Judge's consideration, since it was directly relevant to Pelletier's reliability and credibility. But, defendant offers little to suggest that Agent Coffee intentionally omitted that fact, or that he did so with reckless disregard for the truth, rather than simple inadvertence.

More to the point, however, had that information (motive to fabricate), and information related to Pelletier's seemingly delusional thinking on occasion, been included in the supporting affidavit, probable cause to search defendant's car was still demonstrated. That is, even discounting Pelletier's reliability as an informant to a level at which considerable caution should attend any reliance upon his statements, still, his statements were sufficiently credible because they were corroborated by substantial physical evidence and police observations: Pelletier's claimed basis of knowledge was personal interaction with defendant, and he handed over the counterfeit currency he said defendant gave him; defendant was at the location Pelletier claimed; he was in the car as Pelletier described it; he was apparently living in the car as Pelletier said; counterfeit currency and a counterfeit driver's license were found on defendant's person; the serial numbers on the counterfeit currency were the same as those on counterfeit bills passed in a nearby town several days earlier; and a means of producing

counterfeit currency (an ink jet printer) was plainly visible in the car.  That is, had the omitted information defendant points to been provided in the supporting affidavit, probable cause to search would not have been negated.  The totality of the circumstances disclosed in the affidavit, as supplemented by the omitted material, would still have established probable cause to search defendant's car.

Accordingly, defendant was not entitled to a <u>Franks</u> hearing.  As a practical matter, however, defendant obtained a hearing on the merits of his <u>Franks</u> claim during the evidentiary hearing on his suppression motion.  And, again, on the merits, even considering the information defendant says should have been provided in the supporting affidavit, it is clear that probable cause still existed to search his car.  "Suppression should be ordered only if the warrant application, . . . clarified by disclosure of previously withheld material, no longer demonstrates probable cause."  <u>United States v. Reiner</u>, 500 F.3d at 14.

### Conclusion

For the reasons given, defendant's motion to suppress evidence (document no. 17) and for a <u>Franks</u> hearing (document no. 27) are denied.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

September 19, 2012

cc: Alfred J. T. Rubega, AUSA
    Bruce E. Kenna, Esq.
    U.S. Marshal
    U.S. Probation